UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

        CANTICO INTERNATIONAL, LTD.,

        Alleged Debtor.
------------------------------------------------------------X

Involuntary Petition
Under Chapter 11

Case No. 07-11903 (REG)

**[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF LAW, BASES FOR EXERCISE OF DISCRETION AND ORDER AND JUDGMENT WITH RESPECT TO MOTION OF NORTH FORK BANK, AS TRUSTEE, FOR IMPOSITION OF MONETARY SANCTIONS UNDER BANKRUPTCY RULE 9011 AND 28 U.S.C. § 1927 AGAINST PETITIONING CREDITOR RONALD LOSNER AND ATTORNEY BARTON LEVINE**

North Fork Bank, as Trustee ("Bank") ~~having moved this Court~~ **_moved_**, pursuant to Notice of Motion and Motion ("Motion"), dated October 22, 2007, for entry of an order imposing monetary sanctions, under Rule 9011 of the Federal Rules of Bankruptcy Procedure and section 1927 of title 28, United States Code, against Ronald E. Losner ("Losner"), the petitioning creditor in the above-captioned chapter 11 case and Barton P. Levine, Esq. ("Levine"), the attorney for Losner. ~~and the Office of the United States Trustee having filed a Statement, dated November 30, 2007, in support of the Bank's Motion; and Losner and Levine having filed a joint Response to the Motion, dated January 7, 2008; and the Court having held a hearing with respect to the Motion on January 9, 2008, at which counsel for the Bank and counsel for the U.S. Trustee appeared and participated; and Levine having appeared and participated at such hearing as counsel for Losner and on his own behalf; and Losner having been present in the courtroom~~

1

~~during the hearing; and the Court having reviewed the Motion, the Statement of the U.S. Trustee, the Response of Losner and Levine, and having heard and considered the argument of counsel at the hearing; and after due deliberation and sufficient cause appearing therefore, the Court hereby makes the following Findings of Fact and Conclusions of Law:~~ *At the hearing held on January 9, 2008, the Court found Cantico's involuntary filing to have clearly been made in bad faith and represented sanctionable conduct. However, the Court did not make any findings as to the appropriate amount of sanctions. In the exercise of its discretion, the Court awards North Fork sanctions in the amount of $15,470, as set forth in more detail below.*

### FINDINGS OF FACT

**A.   Background Of The Debtor, The Mortgage And The Foreclosure Action**

1.  North Fork Bank (the "Bank") is the trustee of a self-directed Individual Retirement Account held by Leo Kornblath ("Kornblath"), an 86 year-old retiree, living in Florida.

2.  In March, 1994, Kornblath directed the Bank to transfer $300,000 from his IRA for the purpose of acquiring, by assignment from the prior mortgagee, mortgage loans and the liens securing them ("Mortgage Loan") that had been made to Cantico International, Inc., the alleged Debtor herein.

3.  The Mortgage Loan was secured by the Debtor's interest in real property located at 1072 Victory Boulevard, Staten Island, New York (the "Property").

4.      The Property is commercial property formerly owned by Losner and his mother, Shirley Losner.

5.      Losner had used the Property as the law office of Ronald B. Losner, P.C. prior to Losner's disbarment as an attorney in New York.  ~~*See In re Losner,* 217 A.D.2d 376, 636 N.Y.S.2d 804 (2d Dep't 1995).~~

6.      Before the Mortgage Loan ~~had been~~*was* assigned to the Bank, as Trustee for Kornblath's IRA, the Losners lost the Property in a foreclosure action commenced by Green Point Savings Bank.  Green Point acquired title by Referee's Deed dated December 14, 1993 and recorded on February 3, 1994.

7.      The Property was thereafter conveyed by Green Point to the Debtor for $150,000.

8.      Losner remained in possession of the Property following Green Point's foreclosure and the subsequent conveyance of the Property to the Debtor.

9.      The Debtor's principal was Thomas Neely ("Neely").

10.     The Mortgage Loans that the Bank holds in Kornblath's IRA came into existence on February 10, 1994 and March 4, 1994 when the Debtor executed and delivered two mortgages on the Property to 2A Sagamore Hill Road Corp. ("Sagamore").

11.     Sagamore was controlled by Kornblath's son-in-law.

12.     On March 7, 1994, these mortgages were consolidated pursuant to a Modification, Consolidation and Extension Agreement (the "Consolidation Agreement") and assigned as consolidated in the amount of $300,000 by Sagamore to the Bank, as Trustee.

13. On May 9, 1994, the mortgages were duly recorded.

14. In or about April 1995, the Debtor defaulted in its obligation to make payments under the Mortgage Loans and remained in default thereafter.

15. In August 1995, the Bank, as Trustee of Kornblath's IRA, commenced an action to foreclose the liens of the Mortgage Loans. This was the first of three foreclosure actions based upon the mortgages underlying the Mortgage Loan. The three foreclosure actions eventually were consolidated for trial.

16. During the entire eleven year period in which the Bank sought to foreclose, Losner remained in possession of the Property.

17. Losner's claims and the Bank's consolidated foreclosure actions were tried before the Supreme Court of the State of New York, Richmond County, in January 2006.

18. The trial court, by order dated March 14, 2006, dismissed all of Losner's defenses to the Bank's foreclosure actions and granted the Bank a judgment of foreclosure.

19. On June 26, 2007, the Appellate Division, Second Department, affirmed the trial court's judgment.

20. The Debtor had never contested the foreclosure and never appeared in the action.

21. Although, by order dated July 7, 2005, Losner had obtained a default judgment against Debtor, Losner never established any damages at trial.

22. No judgment was ever awarded to Losner against the Debtor.

23. By order dated March 30, 2007, the State Supreme Court ordered the Property sold at public auction by and under the direction of a Referee.

24. The sale was scheduled for June 21, 2007.

### B. The Involuntary Petition Under Chapter 11 And Motion Practice In This Court

25. Losner filed an involuntary petition under chapter 11 of the United States Bankruptcy Code at 3:02 pm on June 20, 2007, less than twenty-four hours before the scheduled foreclosure sale.

26. By motion dated July 16, 2007 ("Motion to Dismiss"), the Bank moved to dismiss the Petition as a bad faith filing or, in the alternative, for relief from stay to complete its foreclosure proceedings. The hearing on the motion was scheduled for August 1, 2007.

27. Pursuant to the Court's Order Scheduling Chapter 11 Case Conference, dated June 25, 2007, the Court conducted a status conference for the case on July 19, 2007.

28. At the status conference, counsel for the Bank, Levine, as counsel for Losner, and counsel for the U.S. Trustee, appeared. Mr. Levine informed the Court that he was aware of the Bank's motion to dismiss and had no opposition to the Court immediately granting the motion either for dismissal or relief from stay.

29. Accordingly, the Court granted the Bank's motion, to the extent of lifting the automatic stay to permit the foreclosure process to be completed, and entered an order to that effect on July 30, 2007.

30. Following entry of the Order, the Bank returned to the State Court foreclosure process and, in conjunction with the court appointed referee, re-noticed the foreclosure sale and ultimately completed the sale to the highest bidder at foreclosure in January, 2008.

**C. The Bank's Motion For Sanctions**

31. By Notice of Motion and Motion, dated October 22, 2007, the Bank moved for imposition of monetary sanctions against Losner and Levine pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure and section 1927 of title 28 of the United States Code.

32. The Bank asserted that Losner had no basis in law or fact to file the involuntary petition and that the filing was made in bad faith for the purpose of delaying the foreclosure sale so that Losner could remain in possession of the premises rent-free. Levine ~~was complicit in Losner's scheme in that he~~ failed to make due inquiry into Losner*'s* ~~not holding a~~*purported* claim against the Debtor, whether any *such* claim ~~purported to be held by Losner~~ was the subject of a bona fide dispute pursuant to the requirements for filing an involuntary petition set forth in section 303 of the Bankruptcy Code*,* and what purpose would be served by placing the Debtor into a proceeding under chapter 11 of the Bankruptcy Code as the involuntary petition sought to do.

33. The Bank sought a sanction in the amount of $28,105*.50* representing a portion of the legal fees and expenses that it had incurred in moving to dismiss the involuntary petition as a bad faith filing and *in*~~to~~ resuming the foreclosure sale process. The Bank submitted the detailed time records of its attorneys in support of this request.

6

34. The United States Trustee filed a statement in support of the Bank's Motion and Losner and Levine filed a joint response.

35. The Court held a hearing on the Motion on January 9, 2008 at which Levine, as counsel for Losner and on his own behalf, counsel for the Bank and counsel for the U.S. Trustee all participated. Losner was present in the courtroom for the hearing.

36. At the conclusion of the hearing, the Court found that "it was indeed a grossly improper filing and I agree with North Fork and the U.S. Trustee that sanctions are warranted." Transcript ("Tr.") of January 9, 2008 at 68.

## **CONCLUSIONS OF LAW**

37. Bankruptcy Rule 9011 provides, in pertinent part, as follows:

> *(b) Representations to the Court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

38. Rule 9011 further provides as follows:

> *(c) Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> *(2) Nature of Sanction; Limitations.* A sanction imposed for

7

> violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

39. Section 1927 of title 28, United States Code, entitled *Counsel's liability for excessive costs*, provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

40. The Court concludes that sanctions against both Losner and his counsel, Levine, jointly and severally, are appropriate because the involuntary petition was filed in bad faith, without reasonable inquiry as to the bases for filing it and with intent to delay the foreclosure proceeding without justification.

41. As the Court held at the conclusion of the January 9, 2008 hearing, "[t]his was a grossly abusive filing. . . . [T]his was a filing that was facially improper under Section 303 of the Code by a single purported creditor with a false statement as to the existence of a claim in the amount of 750,000 dollars . . ." Tr. at 70.

42. "Based on the undisputed facts, I find that . . . Mr. Losner and his counsel filed this involuntary petition as a 'midnight filing' to block the foreclosure against the property that was scheduled less than twenty-four hours thereafter." Tr. at 70-71.

8

43. "I also find abuse in bringing the involuntary case under Chapter 11 of the Code." Tr. at 72.

44. The Second Circuit, in *Lubow Machine Co., Inc. v. Bayshore Wire Products Corp.*, 209 F.3d 100 (2d Cir. 2000), noted that courts have used four different approaches to determine whether an involuntary petition was filed in bad faith: (a) an "improper use test," which inquires into whether the petitioner is using the bankruptcy system to obtain a disproportionate advantage over other creditors rather than attempting to protect itself against other creditors obtaining a disproportionate advantage; (b) an "improper purpose test," which inquires into whether the petitioner was motivated by such things as ill will, malice or a desire to embarrass or harass the alleged debtor; (c) an "objective test," which inquires into what a reasonable person would have believed in connection with the purpose of Section 303 and the allegations required to be made; and (d) a "Rule 9011 test," which inquires into whether the petition: (i) was justified based upon a reasonable inquiry into the facts and the law; and (ii) was interposed for an improper purpose. *Id.,* 209 F.3d at 105-106.

45. The case at bar ~~clearly satisfies all four tests and the Rule 9011 test in particular~~ ***satisfies the "objective test" and the "Rule 9011 test."***

46. The imposition of sanctions under Bankruptcy Rule 9011 against Losner, as a party represented by counsel, is warranted. *See* L. King, 10 *Collier on Bankruptcy*, § 9011.08[3][a] at 9011-22 (15th ed. Revised) ("Responsibility for a violation will depend on the extent of the client's involvement in the management of litigation and the decisions that resulted in a violation of the rule" citing *Independent Fire Ins. Co. v. Lea*,

9

979 F.2d 377 (5th Cir. 1992), *cert. denied,* 507 U.S. 1052, 113 S. Ct. 1946, 123 L.Ed. 2d 652 (1993); *Burda v. M. Ecker Co.*, 954 F.2d 434 (7th Cir. 1992), *modified after remand,* 2 F.3d 769 (7th Cir. 1993); *In re Hajje*, 2004 Bankr. LEXIS 1659 (Bankr. N.D. Tex. Oct. 22, 2004) (client and attorney sanctioned)).

### D. Losner Was Not A Creditor; Any Claim That He Might Have Held Was Nevertheless Subject To Bona Fide Dispute

47. Losner was not a creditor of the Debtor at the time he filed the involuntary petition.

48. Losner never obtained any determination from the State Court upon which he could assert that he was a creditor of the Debtor.

49. Both Losner and his counsel signed the involuntary petition which listed Losner ~~has~~ ***as*** the holder of a claim against the Debtor in the amount of $750,000.

50. Neither Losner nor his counsel provided any basis upon which they based the claim asserted in the amount of $750,000.

51. To any extent that he had a claim against the Debtor, such claim was clearly in dispute as evidenced by the existence of the appeal.

52. Section 303 of the Bankruptcy Code requires that any entity filing an involuntary petition must hold a claim against the alleged debtor that is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . ."

53. Losner clearly did not meet this standard with respect to the purported claim for $750,000 that he listed in the involuntary petition.

### E. The Involuntary Petition Was Filed Solely To Delay The Foreclosure

10

54. Losner filed the petition in order to delay the foreclosure sale and extend his possession of the Property rent free.

55. Levine made little or no inquiry as to Losner's status as a creditor and whether the purported claim was subject to bona fide dispute.

56. At the status conference, Mr. Levine admitted that the petition was filed to delay the foreclosure sale (Transcript ("Tr.") of July 19, 2007 at 6-7). In his words, this was a "'midnight petition.'" *Id*. at 6.

**F. There Was No Basis To File The Petition Under Chapter 11**

57. Neither Losner nor Levine had any basis to file the involuntary petition under chapter 11 of the Bankruptcy Code.

58. The Debtor was a defunct entity.

59. The Debtor held bare legal title to the Property subject to the Bank's foreclosure actions and the judgment of foreclosure and sale that the Bank obtained.

60. The Debtor's only asset was its legal title to the Property.

61. The Debtor had no business or on-going operations, no revenue, no employees and no creditors other than the Bank.

62. The Debtor had never appeared in the State Court Action throughout the approximately 11 year history of litigation between the Bank, the Debtor and Losner in State Court.

63. ~~Losner knew that the Debtor's principal, Thomas Neely, had effectively abandoned his interest in the Debtor.~~ Losner and his counsel knew, or should have made inquiry and become aware, of the foregoing facts.

11

64. There was no basis upon which the Debtor could have been reorganized or rehabilitated under chapter 11 given that the Debtor was a defunct corporation whose only asset was bare legal title to the Property subject to the Bank's foreclosure action and which had no on-going business operations, revenue, employees or creditors.

65. During the six-month time frame between the time of the July 19, 2007 status conference and the January 9, 2008 hearing on the sanctions motion, Levine never effected service on the alleged Debtor of a summons providing notice of the commencement of the involuntary case notwithstanding that his failure to do so was specifically raised with him by the Court at the July 19th conference.

**G.    The State Court Was The Proper Forum For Determining All Pending Issues**

66. At the time of the filing of the involuntary petition, any disputes between the Debtor, Losner and the Bank had been extensively litigated in the State Court Action and were the subject of the pending appeal by Losner.

67. The disputes essentially amounted to a two party dispute between the foreclosing Bank and Losner as, at best, the putative owner of the Property under his claim of constructive trust.

68. The State Court provided the proper forum for resolution of such disputes.

69. Losner had the opportunity to seek a stay of foreclosure pending appeal in the State Court, but chose not do so.

70. "The undisputed evidence is also compelling . . . that the involuntary filing was to advance the petitioner's private interests to assert a claim of ownership in the debtor's property and to protect his right to occupy the property and not to advance the

interest of a creditor community generally which is the purpose for which the Code provides for involuntary filings." Tr. at 74.

71. The outcome of the appeal that was pending as of the filing date of the involuntary petition was irrelevant to the determination of whether to file an involuntary petition.

72. Losner's claim for constructive trust was in dispute at that time which made him ineligible to file an involuntary petition under section 303 of the Bankruptcy Code.

73. Even if Losner's claim to be the owner of the Property were granted, there was nevertheless no basis to file an involuntary chapter 11 petition against the Debtor given that it was essentially a defunct entity and that its sole asset was subject to foreclosure.

74. Losner had no plan for the economic rehabilitation of the Debtor in chapter 11.

### H. *Amount Of Sanction Award*

75. **_North Fork requests $25,277 in legal fees and expenses incurred in bringing on its motion to dismiss as well as $2,831.50 in fees and expenses in connection with the re-noticing of the foreclosure sale for a total of $28,108.50. There are no facts in the record to suggest that North Fork's legal expenses were extraordinary, and in fact the United States Trustee's office, which joined North Fork in support of this motion, has opined that the fees requested in this matter are reasonable._**

76. *However, after a thorough review of the relevant conduct, the Court finds that in fixing the penalty, some adjustment by reason of Levine and Losner's acknowledgment of wrongful conduct is appropriate, and instead, in the exercise of the Court's discretion, awards North Fork sanctions in the amount of $15,470.*

77. *The Court's award of less than the entire amount of requested sanctions is not a reflection of the value of the work provided by Meyer Suozzi, but rather an acknowledgment of some of the mitigating factors in this case.  For example, after the Appellate Division's adverse decision, Mr. Losner did not contest the dismissal of the bankruptcy case here, and he advised the Court at the July 19, 2007 case management conference that he would consent to the lifting of the automatic stay as to North Fork. This expedited the lift-stay process and permitted North Fork to re-notice foreclosure proceedings sooner than it otherwise could (ignoring for the moment that North Fork should have never been prevented from foreclosing on the property in the first place by this bad faith filing). Based on the foregoing, the Court holds that $12,638.50 or 50% of the requested legal fees and expenses incurred in bringing forth the motion to dismiss, is a fair penalty to impose on Messrs. Losner and Levine for their vexatious and unlawful use of the bankruptcy court.  The Court believes a penalty of this nature is also limited to an amount sufficient to deter repetition of such conduct by other similarly situated ostensible creditors and bankruptcy attorneys, as is required by Rule 9011.  Additionally, there is no question that Messrs. Levine and Losner should also be liable for the entirety of North Fork's fees and expenses incurred in re-noticing the foreclosure sale, which were $2,831.50, as such were a direct and foreseeable result of*

14

*their actions.  Messrs. Losner and Levine will thus be jointly and severally liable for $15,470, for which judgment will issue.*

## ORDER AND JUDGMENT

**ACCORDINGLY, IT IS HEREBY ORDER, ADJUDGED AND DECREED AS FOLLOWS:**

A.  The Court hereby imposes a monetary sanction against Ronald E. Losner and Barton P. Levine, Esq., jointly and severally, in the amount of *$15,470*.

B.  The Clerk of this Court is hereby authorized to enter this Order as a judgment in favor of North Fork Bank, as Trustee and against Ronald Losner and Barton Levine, jointly and severally, in the amount of *$15,470.*


C.  ~~The United States Marshall, through his agents and officers, is hereby authorized and directed~~*Any sheriff, Marshal or other duly authorized New York State or City Official is authorized*, upon request from the Bank, to enforce this judgment against Losner and Levine in any manner permitted by law.


Dated:  New York, New York
        March *19*, 2008

                                        */s/ Robert E. Gerber*
                                        United States Bankruptcy Judge

15

641052v.1